IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BILLIE A. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.  14-2434-JAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Billie White's application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[1]  Because the Court finds that defendant Commissioner's findings are not supported by substantial evidence, the Court reverses and remands the decision of the defendant Commissioner.

## I.      Procedural History

On January 5, 2011, Plaintiff protectively applied for a period of disability and disability insurance benefits.  Her application claimed an onset date of February 16, 2010; and she was last insured for disability insurance benefits on December 31, 2015.   Plaintiff's application was denied initially and upon reconsideration.  Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied plaintiff's request for review of the ALJ's

---

[1]42 U.S.C. §§ 401–434.

decision.  Plaintiff then timely sought  judicial review before this Court.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[2]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is

---

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3]*Id*. (quoting *Castellano*, 26 F.3d at 1028).

[4]*Id.*

[5]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

disabled.[7]  If the ALJ determines the claimant is disabled or not disabled at any step along the

way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not

engaged in substantial gainful activity[9] since February 16, 2010, the alleged onset date.  Nor

does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe"

impairments: degenerative disc disease, carpal tunnel syndrome, obesity, fibromyalgia and

diabetes mellitus.  Nor does Plaintiff challenge the ALJ's determination at step three that none of

her severe impairments or combination of impairments meet or medically equal a listing.

But Plaintiff challenges the ALJ's determination at steps four and five that Plaintiff has

the residual functional capacity (RFC) to perform light work in that she: can lift and carry 20

pounds occasionally and 10 pounds frequently; can sit, for six hours (with normal breaks) in an

eight-hour workday; can stand and walk up to two hours of an eight hour-workday; can never

never climb ladders, ropes or scaffolds; and can occasionally climb ramps or stairs, stoop, kneel,

crouch and crawl.  Plaintiff contends that the ALJ erred in failing to mention, much less discuss,

the opinion of Dr. George Fluter, who opined that Plaintiff's carpal tunnel syndrome caused her

functional limitations or restrictions in the use of both hands.  These restrictions, Plaintiff argues,

would preclude her from any of the jobs that the vocational expert opined Plaintiff could

perform.   Plaintiff contends that the ALJ committed other errors at step 5.  Because the Court

concludes that the ALJ erred in determining Plaintiff's RFC, necessitating reversal and remand,

---

[7]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[8]*Id.*

[9]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

the Court will not address these other alleged errors, but directs the Commissioner to consider

the applicable law upon remand, particularly as it pertains to obtaining, utilizing and interpreting

evidence from a vocational expert.  .

**IV.    Discussion**

    **ALJ failure to discuss weight accorded to opinion of Dr. Fluter**

 Plaintiff argues that there is no substantial evidence supporting the ALJ's decision, as

the ALJ erred in failing to address the opinion of Dr. George Fluter, a consultative physician

who examined Plaintiff on February 16, 2011, and opined that Plaintiff had postoperative median

nerve entrapment in both the right and left wrists, an impairment that limited her to only

occasionally grasping, flexing and extending her wrists, as well as only occasionally using power

or vibratory tools, and that resulted in Plaintiff needing to wear thermal protection for her hands

when exposed to cold.

    These limitations as opined by Dr. Fluter, were not included in the ALJ's RFC.  Had they

been included, that would have precluded Plaintiff from performing the jobs the vocational

expert opined Plaintiff could perform.   For the four jobs identified by the vocational expert all

required at least frequent reaching, handling, and fingering.  The job of polisher also requires

frequent feeling and manipulating objects as a significant part of the job.  The job of document

preparer also requires handling and copying as significant requirements of the job; the job of

electrical assembler requires significant handling; and the job of marker requires significant

copying.

    While Plaintiff has had a number of treating physicians, as well as physicians who

offered opinions based on a consultative examination or a review of her medical records, most of

these opinions related to Plaintiff's severe fibromyalgia, and/or Plaintiff's severe degenerative disc disease and its effect on her lumbar and cervical spine.[10]  Specifically with respect to her severe carpal tunnel and related limitations, the record includes the opinion of Dr. George Fluter, a pain management specialist who performed a consultative examination of Plaintiff on February 16, 2011, as well as the notes and opinions of three physicians who treated Plaintiff's carpal tunnel: Drs. Derek Miller, Bradley Davis and Hish Majzoub, and the opinion of a state agency physician, Dr. Gary Coleman, who reviewed Plaintiff's medical records.

The ALJ expressly gave great weight to the opinion of treating physician Dr. Derek Miller, who on February 8, 2011, released Plaintiff to return to work full duty, with no restrictions on her hands.  To be sure, the opinion of a treating physician must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either respect, it is not entitled to controlling weight."[11]  In fact, a treating physician's medical opinion is subject to a two-step inquiry.  First, an ALJ must give such an opinion "controlling weight" if it is "'well-supported by medically acceptable clinical or laboratory diagnostic techniques'" and is not "'inconsistent with the other substantial evidence in the case record.'"[12]

---

[10]Drs. Goodlove and Farris treated Plaintiff for a work-related injury to her lumbar spine. Drs. Hetlinger, Al-Shathir, Estep, Hufford, Thomen and Mellion treated Plaintiff for issues concerning her lumbar spine, cervical spine, and fibromyalgia. Drs. Coleman and Kaur reviewed Plaintiff's medical records, but offered no opinions concerning limitations related to her carpal tunnel.

[11]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

[12]*Watkins*, 350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *2); *see also* 20 C.F.R. § 416.927(d)(2) (listing same criteria).

And, if a treating physician's medical opinion is not entitled to controlling weight, it is still entitled to deference; and at the second step of the analysis, the ALJ must make clear how much weight the opinion is being given, including whether it is being rejected outright, and give good reasons, tied to the factors specified in the regulations."[13]  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[14]  Further, if the ALJ does not give a treating physician's opinion controlling weight, he must consider *all* other medical opinions in the record to see if they outweigh the reports of the treating physician.[15]

Here, the ALJ provided only a cursory explanation of how Dr. Miller's opinion was consistent with other substantial evidence.  The ALJ noted that Plaintiff had bilateral carpal tunnel, with moderate median neuropathy at the wrists, confirmed by electrodiagnostic testing. The ALJ noted that after Plaintiff had open carpal decompression surgery on her right wrist in October 2010 and on her left wrist in December 2010,  Dr. Miller released her to return to work full duty on February 8, 2011, with no restrictions, opining that there were no objective problems or functional limitations.  The ALJ further noted that Dr. Miller's February 8, 2011 physical

---

[13]*Krause v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[14]*Goatcher v. U.S. Dept. of Health & Human Services*, 52 F.3d 288 at 290 (citing 20 CFR § 404.1527(d)(2)–(6)).

[15]SSR 96–5P, 1996 WL 374183 (July 2, 1996).

examination revealed that Plaintiff had a very minimal progression of the return of the median nerve based on very minimal tenderness in her left wrist and subtle numbness on the tip of her middle fingers bilaterally.  Dr. Miller's record on February 8, 2011 further noted that Plaintiff had completed physical therapy, and that Plaintiff was "very pleased with her outcome."  Dr. Miller opined, without further explanation, that Plaintiff could return to work without restriction.

But the ALJ failed to discuss whether Dr. Miller's opinion was consistent with other substantial evidence.  This is particularly problematic since there were other physicians who treated or examined Plaintiff's carpal tunnel.  One of these physicians, Dr. Mazjoub, treated Plaintiff's carpal tunnel earlier, in May 2010, before she underwent the carpal decompression surgeries.  But Dr. Davis treated Plaintiff from March 2010 until October 2011, long after Dr. Miller released Plaintiff to return to work on February 8, 2011.  In fact it was Dr. Davis who in April 2010 ordered the bilateral carpal compression studies, and found that these studies were consistent with mild to moderate carpal tunnel syndrome.  Dr. Davis prescribed wrist splints.  But, in subsequent office visits in 2010 and 2011, Dr. Davis did not specifically note anything about Plaintiff's carpal tunnel symptoms or treatment.

Thus, perhaps of greater relevance is the medical record review and consultative examination performed by Dr. Fluter on February 16, 2011.  Dr. Fluter examined Plaintiff just eight days after Dr. Miller had released Plaintiff to work with no restrictions on the use of her hands.  And, Dr. Fluter's examination focused on Plaintiff's carpal tunnel.  Dr. Fluter noted that after her surgery, Plaintiff did twelve physical therapy sessions and continued to wear braces on her wrists for one month.  Upon physical examination, Dr. Fluter noted that Plaintiff had well-healed surgical incisions, but tenderness to palpation at the incision sites on her wrists.  Dr.

Fluter characterized Plaintiff's prognosis as "guarded," and opined that with respect to Plaintiff's right and left carpal tunnel syndrome, Plaintiff had reached maximal medical improvement and had "mild postoperative degree of median nerve entrapment at the right and left wrists." He further opined that Plaintiff's impairments related to the right and left carpal tunnel would support restrictions, to: occasionally engaging in repetitive grasping with either hand; occasionally engaging in repetitive flexion and extension of either wrist; occasional use of power/vibratory tools; using appropriate thermal protection for the hands when working in cold environments; and occasionally lifting, carrying, pushing and pulling 35 pounds and frequently lifting, carrying, pushing and pulling 15 pounds.

In the face of these conflicting notes and opinions of other medical providers, and in light of the ALJ's only cursory explanation for endowing Dr. Miller's opinion with great weight, this Court concludes that the ALJ committed error.  Although the opinion of a physician such as Dr. Fluter, who examines a patient on one occasion, is generally not entitled the weight of a treating physician with an ongoing therapeutic relationship, the ALJ should have explained what weight she gave to the opinion of Dr. Fluter.  This is particularly so because Dr. Fluter opined that Plaintiff had remarkable limitations in the use of her hands, and his examination occurred on February 16, 2011, just eight days after Dr. Miller released Plaintiff to return to work with no limitations on the use of her hands.   This is also particularly so because Dr. Fluter focused on Plaintiff's carpal tunnel, and his records demonstrate that he examined her wrists and hands; it is unclear from Dr. Miller's records what examination he did on Plaintiff's hands on February 8, 2011.   In short, there is inconsistent evidence that should have been evaluated and discussed. Without this analysis and discussion, this Court is incapable of performing a meaningful review

of the ALJ's decision to accord great weight to the opinion of Dr. Miller.

**V.      Conclusion**

For these reasons, the Court concludes that the ALJ erred at steps four and five, in failing to discuss and explain the weight accorded the various medical providers that treated, examined and opined about Plaintiff's carpal tunnel syndrome.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: November 4, 2015 (12:50pm)

 S/ Julie A. Robinson                                      

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE